[Cite as *In re I.A.*, 2013-Ohio-360.]

STATE OF OHIO       )           IN THE COURT OF APPEALS
                    )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

IN RE: I.A.                          C.A. No.      26642

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN10-10-0756

DECISION AND JOURNAL ENTRY

Dated: February 6, 2013

WHITMORE, Judge.

**{¶1}** Appellant, Haley A. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I

**{¶2}** Mother is the natural mother of I.A., born January 21, 2008. Mother also has an older child who is in the legal custody of paternal relatives and is not at issue in this appeal. I.A.'s father did not participate in the trial court proceedings, nor is he a party to the appeal.

**{¶3}** On October 22, 2010, CSB filed a complaint, alleging that I.A. was a neglected and dependent child because Mother had an ongoing addiction to heroin and prescription drugs and could not care for her child. Although Mother had entered a treatment facility and left I.A. in the care of a relative, the relative was not able to care for I.A. on a long-term basis. Mother

also had untreated mental health problems, lacked stable employment and housing, and had a history of involving herself and her family with inappropriate people, including a man who had perpetrated violence against her older child. I.A. was removed from Mother's custody, adjudicated a dependent child, and placed in the temporary custody of CSB.

{¶4} Throughout this case, Mother continued to abuse drugs. Although she entered drug treatment twice, she relapsed during treatment and eventually was terminated from the program. Consequently, on April 3, 2012, CSB moved for permanent custody of I.A. Mother later moved the trial court to place I.A. in the legal custody of the maternal grandparents, who had just started visiting I.A. after not seeing her for over a year.

{¶5} During the few months before the hearing, Mother continued to test positive for benzodiazepine and other illegal drugs. She also failed to comply with the case plan requirements that she address her mental health problems, complete parenting classes, and maintain stable housing and employment.

{¶6} Following a hearing on CSB's motion for permanent custody and Mother's motion for legal custody to the grandparents, the trial court found that I.A. had been in the temporary custody of CSB for more than 12 of the prior 22 months and that it was in her best interest to be paced in the permanent custody of CSB, not in the legal custody of her grandparents. Consequently, it terminated Mother's parental rights and placed I.A. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II

Assignment of Error

THE TRIAL COURT'S DENIAL OF MOTHER'S MOTION FOR LEGAL CUSTODY OF I.A. TO THE MATERNAL [GRANDPARENTS] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS REVERSIBLE ERROR.

{¶7} Mother's sole assignment of error is that the trial court's decision to place I.A. in the permanent custody of CSB was not supported by the evidence presented at the hearing. We disagree.

{¶8} Before a juvenile court may terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test that: (1) the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interests of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9} The trial court found that the first prong of the permanent custody test had been satisfied because I.A. had been in the temporary custody of CSB for more than 12 of the prior 22 months. Mother does not contest that finding, but instead argues that legal custody to the maternal grandparents, not permanent custody to CSB, was in the best interest of I.A.

{¶10} Because the trial court's decision to deny the motion for legal custody to the grandparents likewise hinged on the best interest of the child, this Court typically conducts a single "best interest" review of the trial court's decision to place the child in the permanent custody of the agency rather than in the legal custody to a relative. *E.g.*, *In re T-G.M.*, 9th Dist. No. 25858, 2011-Ohio-3940, ¶ 13. If permanent custody is in the child's best interest, then legal custody to the maternal grandparents is not. *Id.* "Consequently, this Court will review the factors set forth in R.C. 2151.414(D) in reviewing the [best interest] decision of the trial court * * *." *Id.*

{¶11} When determining whether a grant of permanent custody is in a child's best interests, the juvenile court must consider the following factors:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency * * *.

R.C. 2151.414(D)(1)(a)-(d).[1]

{¶12} During the pendency of this case, Mother's interaction with I.A. was limited to supervised visitation because Mother failed to obtain consistent substance abuse and mental health treatment. Although Mother's limited interaction with I.A. was usually appropriate, she sometimes spent the visit talking on her cell phone or watching I.A., rather than engaging her in activities or conversation. Moreover, Mother did not attend visits on a regular basis and often left early. Witnesses further testified that Mother's purported reasons for missing visits or leaving early were often incredible and/or demonstrated that she put her own needs and desires ahead of those of her child. Furthermore, although Mother had the ability to make phone calls to I.A. at the foster home, she never did.

---

[1] The factor set forth in R.C. 2151.414(D)(1)(e) does not apply to the facts of this case.

{¶13} The foster mother testified that, because I.A. became upset when Mother failed to attend visits, she stopped telling I.A. about visits ahead of time. Several witnesses expressed concern that Mother did not seem to understand and/or care that her lack of commitment to I.A. had caused extensive emotional harm to the child. I.A. had been in counseling for the past year to address those issues. Although the counselor had repeatedly urged Mother to meet with her to discuss I.A.'s emotional issues, Mother never met with the counselor.

{¶14} For nearly two years, I.A. had been living in the home of the same foster parents, who were distantly related to Mother's family by marriage. The guardian ad litem and caseworker both testified about the stable, structured, and positive environment that the foster family had been providing for I.A. Through regular counseling and the support of the foster parents, I.A. had been resolving her emotional problems and had become "very, very comfortable" in the foster parents' home. Both foster parents testified about their love for I.A. and their willingness to continue providing her with a stable home. The foster mother testified that I.A. had become a "huge part" of their lives and explained how their daily lives revolved around her. She expressed their desire to adopt I.A. if the permanent custody motion was granted, and further testified that they would allow Mother to maintain a relationship with I.A. because they knew that I.A. loved her. The caseworker testified that he believed that the foster parents sincerely wanted to maintain I.A.'s relationship with Mother.

{¶15} I.A. also has an older half-brother, S., who lives in the legal custody of a relative. Although Mother and her extended family had failed to maintain a consistent relationship with S., the foster parents had arranged with the custodian for visits between I.A. and S. at least once a month. According to S.'s custodian, I.A. and S. had a good relationship and were closely

bonded. The foster parents and custodian intended to maintain a relationship between the two siblings.

**{¶16}** The maternal grandparents, on the other hand, had not maintained any relationship with S. and did not have a close relationship with I.A. due to their lack of interaction with her. They had only recently expressed an interest in legal custody of I.A., after CSB moved for permanent custody. Because they realized that Mother would not be able to provide a home for I.A., they agreed to care for I.A. until she reached the age of 18 "[i]f that's what it takes."

**{¶17}** At the time of the hearing, the grandparents had just started visiting I.A. and had seen her only three times during this case. The caseworker expressed his concern that, although the grandparents had an "open-ended invitation" to visit with I.A. throughout this case, they did not take advantage of those visits until shortly before the hearing. The grandparents explained that they did not schedule any visits during the first year of the case because they did not want to complete criminal background checks or have supervised visits with I.A., as ordered by the court. They felt that the trial court had unjustly denied their requests for unsupervised visits in their home. Because they were offended that the court required them to prove their suitability to care for I.A., they instead chose not to see her until recently. At the hearing, they conceded that they had allowed their pride to prevent them from developing a close relationship with I.A.

**{¶18}** Because the grandparents' interest in legal custody arose "so late in the case" and they had visited with I.A. only three times, for brief periods of time under the supervision of the foster parents, CSB did not view them as a viable option for permanent placement of I.A. The caseworker explained that, given the grandparents' limited interaction with I.A., CSB had no idea whether they could provide a suitable, long-term home for her.

{¶19} Although I.A. did not speak to the trial court in camera, she had consistently told the guardian ad litem and the caseworker that she wanted to stay with her foster family. She told the guardian ad litem that she knew Mother could not take care of her because she was sick all the time. The guardian ad litem also expressed her opinion to the court that permanent custody was in the best interest of I.A.

{¶20} I.A. had spent approximately two years living outside Mother's home. This Court has repeatedly stressed, however, that "'the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child.'" *In re C.M.*, 9th Dist. No. 21372, 2003-Ohio-5040, ¶ 16, quoting *In re Smith*, 9th Dist. No. 20711, 2002 WL 5178, *5 (Jan. 2, 2002). During the past two years, I.A. remained outside Mother's custody because Mother continued to struggle with substance abuse and mental health issues and had made little progress addressing either problem. During that same period, however, I.A. had made substantial progress addressing her emotional issues and had developed a happy, stable, and structured life in the home of the foster parents.

{¶21} Having spent nearly half of her life in a temporary placement, I.A. was in need of a legally secure and permanent home. Mother was unable to provide a home for her at that time and CSB had been unable to find any suitable relatives who were able to provide her with a stable home. Although the maternal grandparents had recently expressed a willingness to take legal custody of I.A., the trial court reasonably shared CSB's concerns that the grandparents had a recent and limited relationship with I.A. and had not demonstrated an ability to care for her on a day-to-day basis.

{¶22} The guardian ad litem explained that she had not observed a strong bond between I.A. and her maternal grandparents and stressed, as the caseworker had, that there was little one-

on-one interaction between I.A. and her grandparents during their few visits together. The guardian shared the caseworker's concern that the maternal grandparents did not visit with I.A. for over a year during this case, even though they had opportunities to do so. Moreover, after they finally began visits, they visited only three times and cancelled one of their scheduled visits because they were busy getting ready for a vacation. The guardian expressed her added concern that the grandparents would not adequately protect I.A. from Mother.

{¶23} The foster parents, on the other hand, had demonstrated a dedication to meeting the daily needs of I.A., providing her with structure and stability, and making her a part of their family. The evidence was not disputed that I.A. was bonded to the foster parents and was thriving in their home. Because the foster parents wanted to adopt I.A., the trial court reasonably concluded that a legally secure permanent placement would most likely be achieved by granting CSB permanent custody of I.A.

{¶24} The trial court had substantial evidence before it to support its conclusion that permanent custody to CSB, not legal custody to the maternal grandparents, was in the best interest of I.A. Consequently, it did not err in terminating Mother's parental rights and placing I.A. in the permanent custody of CSB. Mother's assignment of error is overruled.

## III

{¶25} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

LEONARD J. BREIDING, II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

LINDA BENNETT, Guardian ad litem.