[Cite as *In re L.C.*, 2013-Ohio-2799.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| COUNTY OF SUMMIT | )ss:<br>) | | NINTH JUDICIAL DISTRICT |

IN RE: L.C.
      L.C.

C.A. No.     26816

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 11 03 0227
                   DN 11 03 0228

DECISION AND JOURNAL ENTRY

Dated: June 28, 2013

CARR, Presiding Judge.

{¶1} Appellant, Virginia S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the natural mother of L.C., born November 28, 2007, and L.C., born September 22, 2009. Mother also has another child who is not at issue in this case. The children's father did not participate in the trial court proceedings and is not a party to this appeal.

{¶3} On March 31, 2011, CSB filed complaints, alleging that L.C. and L.C. were neglected and dependent children because Mother was addicted to heroin, would often leave the children with inappropriate caregivers, and otherwise failed to provide adequate care for them. The juvenile court initially allowed the children to remain in Mother's home under an order of

protective supervision by CSB. On June 17, 2011, however, CSB filed amended complaints, alleging that Mother had not been complying with the requirements of the case plan, that drugs were still being used in the home while the children were present, and that drugs and paraphernalia were found in the home in areas that were accessible by the children. CSB also learned that Mother suffered from untreated mental health problems.

{¶4} L.C. and L.C. were later adjudicated neglected and dependent children and placed in the temporary custody of CSB. In addition to demonstrating that she could provide for her children's basic needs, the case plan required Mother to obtain psychological and chemical dependency assessments, receive ongoing mental health and substance abuse treatment, and submit urine samples for regular drug screening.

{¶5} Throughout the next year, Mother failed to work on the reunification goals of the case plan. She did not even obtain mental health or chemical dependency assessments, the first step toward addressing her primary parenting problems. CSB filed a motion for permanent custody, but the trial court granted a six-month extension of temporary custody to allow Mother more time to address her mental health and substance abuse problems.

{¶6} During the extension period, however, Mother made little progress on the reunification goals. Although she eventually obtained the required chemical dependency and psychological assessments, she did not follow up with regular counseling, nor did she demonstrate sobriety through regular urine drug screens. Consequently, on October 3, 2012, CSB again moved for permanent custody of L.C. and L.C. Following a hearing on CSB's motion and Mother's alternative motions for legal custody to an aunt or for an extension of temporary custody, the trial court found that the children had been in the temporary custody of CSB for more than 12 of the prior 22 months and that it was in their best interests to be placed in

the permanent custody of CSB, not in the legal custody of the aunt. Consequently, it terminated Mother's parental rights and placed L.C. and L.C. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT'S DENIAL OF MOTHER'S MOTION FOR LEGAL CUSTODY OF THE CHILDREN TO A RELATIVE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS REVERSIBLE ERROR.

{¶7}   Mother's sole assignment of error is that the trial court's decision to place L.C. and L.C. in the permanent custody of CSB was not supported by the evidence presented at the hearing. We disagree.

{¶8}   Before a juvenile court may terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test that: (1) the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interests of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9}   The trial court found that the first prong of the permanent custody test had been satisfied because L.C. and L.C. had been in the temporary custody of CSB for more than 12 of the prior 22 months. Mother does not contest that finding, but instead argues that legal custody to the maternal aunt, not permanent custody to CSB, was in the best interest of L.C. and L.C.

**{¶10}** Because the trial court's decision to deny the motion for legal custody to the maternal aunt was also based on the best interest of the children, "this Court typically conducts a single 'best interest' review of the trial court's decision to place the child[ren] in the permanent custody of the agency rather than in the legal custody to a relative." *In re I.A.*, 9th Dist. No. 26642, 2013-Ohio-360, ¶ 10. If permanent custody is in the child's best interest, legal custody to the aunt necessarily is not. *Id.* "'Consequently, this Court will review the factors set forth in R.C. 2151.414(D) in reviewing the [best interest] decision of the trial court * * *.'" *Id.*, quoting *In re T-G.M.*, 9th Dist. No. 25858, 2011-Ohio-3940, ¶ 13.

**{¶11}** When determining whether a grant of permanent custody is in a child's best interests, the juvenile court must consider the following factors:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency * * *.

R.C. 2151.414(D)(1)(a)-(d).[1]

**{¶12}** After L.C. and L.C. were removed from Mother's home in June 2011, Mother's interaction with them throughout this case was limited to supervised visitation because CSB

---

[1] The factor set forth in R.C. 2151.414(D)(1)(e) does not apply to the facts of this case.

remained concerned about her mental health and substance abuse problems. Even after Mother eventually obtained chemical dependency and psychological assessments, she did not follow through with consistent treatment for either problem. Although Mother attended visits on a consistent basis and her interaction with the children was usually appropriate, the caseworker testified that Mother sometimes appeared to be under the influence of drugs or exhibiting symptoms of her mental illness. The caseworker explained that Mother was sometimes disheveled, spoke in a loud voice, and/or became easily overwhelmed by her children.

{¶13} During the six months before the hearing, Mother had attended only six mental health counseling sessions and three substance abuse counseling sessions. Moreover, she submitted only six urine samples for drug testing, four of which tested positive for multiple controlled substances, including marijuana, opiates, oxycodone, and/or benzodiazepines. Although Mother had a doctor's prescription to explain the presence of opiates in her system, she had no legitimate explanation for testing positive for the other controlled substances. Consequently, during the 18-month period that the children had lived outside Mother's home, aside from three or four visits that were longer, Mother's interaction with them was limited to hour-long visits that were supervised by CSB.

{¶14} The evidence before the trial court further demonstrated that the children did not have a close relationship with the maternal aunt who was seeking legal custody. The aunt's interaction with the children throughout their lives had been limited to seeing them only "twice" while they lived with a paternal relative and "a couple times" while they lived with Mother. During the lengthy period during this case that the children lived in the temporary custody of CSB, the aunt had no interaction with them because she did not request permission to attend

visits. The guardian ad litem testified that, when she asked the children about the important people in their lives, they did not mention the aunt.

{¶15} The children's interaction and interrelationship with their foster family, on the other hand, was described by the caseworker and the guardian ad litem as a positive one. According to the guardian ad litem, the children were "thriving" in the foster home. For example, she explained that, prior to their removal from Mother's home, the older L.C. would tend to care for the younger one. In the foster home, she was learning to be a child and trust the foster parents to care for her younger sister. The guardian further testified that the children were bonded with the foster parents, went to them for nurturing and support, and that all of their needs were being met in that home. The foster parents expressed interest in adopting both children if the trial court granted permanent custody to CSB.

{¶16} Because the children were only three and five years old at the time of the hearing, the guardian ad litem spoke on their behalf. She testified that the older child had expressed her desire to stay with the foster family. The guardian ad litem opined that permanent custody was in the best interests of both children because Mother continued to struggle with mental health and substance abuse problems despite having almost two years during this case to obtain treatment.

{¶17} The custodial history of the children included a period of 18 months living outside Mother's custody, which was a significant portion of the lives of these young children. During the earlier years that they did live with Mother, the older L.C., then less than four years old, had tried to provide some basic care for herself and the younger child, apparently because Mother was not providing them with adequate parental care.

{¶18} Given that the children had spent much of their young lives in temporary placements, which had included several different homes during this case, they were in need of a legally secure permanent placement. The children had adjusted well to their current foster home, where they had lived for several months, and the foster parents were interested in adopting them if CSB was granted permanent custody.

{¶19} The evidence demonstrated that Mother was not prepared to provide the children with a legally secure permanent placement and CSB had been unable to find a suitable relative who was willing and able to do so. Although Mother argues that the maternal aunt could provide the children with a suitable permanent home, there was ample evidence before the trial court to support its conclusion that the aunt was not prepared to provide the children with a suitable permanent home.

{¶20} As explained already, the aunt did not have a close relationship with the children and had made no showing to CSB that she could even interact appropriately with them. Many months earlier, CSB had considered the aunt as a potential placement for the children, but rejected her because she had her own untreated mental health problems and lacked adequate resources to provide for two young children in her home. Shortly before the permanent custody hearing, the aunt contacted CSB and asked that the agency reconsider her as a potential placement because she was receiving mental health treatment and had moved into a larger apartment. Her testimony at the hearing demonstrated, however, that she had not fully considered the consequences of adding two children to her household, including how she would obtain or pay for the additional supplies that would be needed in her home or how she would provide for their care while she worked. Moreover, the aunt did not indicate a willingness to assume the permanent role of a legal custodian. *See, e.g*., R.C. 2151.42(B)(legal custody is

"intended to be permanent in nature."). As emphasized by the trial court, the aunt seemed to view legal custody as a temporary placement because she testified that she was prepared to provide the children with home "until [Mother] gets on her feet." The aunt misunderstood that the role of a legal custodian was to care for the children only until Mother "did * * * what [she was] supposed to do" and then the aunt would "hand the children over to [her.]"

{¶21} Given all of the evidence presented at the hearing, the trial court reasonably concluded that a legally secure permanent placement for L.C. and L.C. would only be achieved by granting the permanent custody motion. The trial court did not err in concluding that permanent custody to CSB, not legal custody to the maternal aunt, was in the best interests of L.C. and L.C. Mother's assignment of error is overruled.

## III.

{¶22} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.