[Cite as *In re D.B.*, 2016-Ohio-4990.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: D.B.

C.A. Nos.    16CA010901
              16CA010903

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14JC41994

DECISION AND JOURNAL ENTRY

Dated: July 18, 2016

SCHAFER, Judge.

{¶1} Appellants, Bobbie Z. ("Mother") and Steven B. ("Father"), appeal from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their minor child and placed him in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of D.B., born June 19, 2012. The parents have older children who were removed from their custody several years ago and placed in the legal custody of paternal relatives, but those children are not parties to this appeal.

{¶3} D.B. was removed from the custody of his parents on April 21, 2014. LCCS filed a complaint to allege that he was a neglected and dependent child because Mother had given birth to another child and had tested positive for cocaine during one prenatal visit and after the child was born. The newborn child, who died shortly after birth because of complications from a

blood disorder that apparently was not connected to Mother's drug use, is not a party to this appeal.

{¶4}   At the adjudicatory hearing, both parents stipulated that D.B. was a neglected and dependent child because: Mother had a long history of illegal drug use and mental health problems, which had contributed to her losing custody of her three older children; both parents had recently tested positive for illegal drugs; and neither parent had cooperated with LCCS to prevent the removal of D.B. from the home.  In fact, the parents conceded that they had threatened to leave the state to avoid LCCS again becoming involved with their family.

{¶5}   The parents also agreed that D.B. should be placed in the temporary custody of LCCS and that the case plan should be adopted as an order of the court.  Among other things, the case plan required that both parents obtain mental health and substance abuse assessments, follow any treatment recommendations, and sign releases of information with service providers to enable LCCS to monitor their progress on the reunification goals of the case plan.

{¶6}   Following a review hearing on March 19, 2015, the trial court found that Mother and Father had both tested positive for heroin during August 2014, refused to submit to drug screening for the next two months, and each tested positive for illegal drugs when they resumed drug testing in November 2014.  Because the parents began cooperating with LCCS and tested negative for drugs for the next few months, however, the trial court extended temporary custody.

{¶7}   Shortly after the trial court extended temporary custody, LCCS again became concerned that neither parent was making progress on the reunification goals of the case plan. Both parents exhibited hostility toward LCCS and began denying that they had substance abuse problems.  They insisted that LCCS and other agencies that had conducted drug testing had tainted their samples and/or substituted them with positive drug screens from other people.

Mother stopped engaging in drug and mental health treatment and Father revoked all information releases so LCCS was unable to determine whether he was complying with the case plan.

{¶8} On June 25, 2015, LCCS moved for permanent custody of D.B. The parents alternatively requested that the trial court extend temporary custody for another six months and/or place D.B. in the legal custody of a maternal aunt. During the months leading up to the hearing, the parents' uncooperative and hostile behavior toward LCCS continued to intensify. After a visit with D.B. during September 2015, the case plan was amended to terminate their visits with D.B. because both parents had threatened to harm LCCS staff.

{¶9} Following a hearing on the alternate dispositional motions less than one month later, the trial court terminated parental rights and placed D.B. in the permanent custody of LCCS. Mother and Father separately appealed and their appeals were later consolidated. Mother raises one assignment of error and Father raises five, which will be consolidated and/or rearranged to facilitate review. This Court will focus on Father's challenges to the admission of evidence before those pertaining to whether the trial court properly weighed the evidence admitted at the hearing.

II.

**FATHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN SOLICITING EVIDENCE OF AND RELYING UPON HISTORICAL CONCERNS OF THE AGENCY IN CASES INVOLVING OTHER CHILDREN OF MOTHER AND FATHER WHO WERE PLACED WITH RELATIVES AS LEGAL CUSTODIANS IN A PRIOR CASE.

**FATHER'S ASSIGNMENT OF ERROR III**

FATHER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN FATHER'S COUNSEL FAILED TO OBJECT TO HEARSAY IN THE FORM OF DRUG SCREEN RESULTS AND HEARSAY CONCERNING WHAT ONE OF FATHER'S TREATING PHYSICIANS TOLD THE CASEWORKER.

**FATHER'S ASSIGNMENT OF ERROR IV**

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT RELIED UPON HEARSAY TESTIMONY IN THE FORM OF DRUG SCREEN RESULTS ATTRIBUTED TO FATHER.

{¶10} These three assignments of error will be addressed together because they are closely related. Father argues that the trial court committed reversible error by considering certain testimony of the caseworker and the guardian ad litem. Father did not raise objections to any of this testimony at the hearing, but argues that the admission of some of the testimony constituted plain error and/or that his trial counsel was ineffective for failing to object to its admission.

{¶11} To establish a claim of ineffective assistance of counsel, Father must demonstrate that his trial counsel's performance was deficient and that the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, Father must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

{¶12} The standard of review for plain error is similar to the standard for reviewing a claim of ineffective assistance of counsel, although plain error requires more certain proof of prejudice to the appellant. While ineffectiveness requires proof of a *reasonable probability* that the trial result would have been different but for the error, plain error under the criminal standard requires proof that the trial result *clearly* would have been otherwise. *State v. Murphy*, 91 Ohio St.3d 516, 559 (2001) (Cook, J, concurring). The civil plain error standard requires the demonstration of an even greater level of error, as it must be one that rises to the level of challenging the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson,* 79 Ohio St.3d 116 (1997), syllabus. This Court has not determined which is the appropriate plain

error standard to apply in cases involving the termination of parental rights and it need not do so now. *See In re D.S.*, 9th Dist. Summit No. 24619, 2009-Ohio-3167, ¶ 10.

{¶13} Father's assigned errors focus on testimony of the caseworker and the guardian ad litem that he used illegal drugs during this case and the prior cases involving his older children. He argues that the testimony was inadmissible hearsay because neither witness had firsthand knowledge that Father had used drugs, but instead relied on the results of drug testing performed by others.

{¶14} Although Mother stipulated to the admission of her drug screen results, Father did not. Father argues that, because he testified that he never used illegal drugs, refused to allow documentary evidence of his drugs screens into evidence, and neither the caseworker nor the guardian ad litem had firsthand knowledge that he had, in fact, testified positive for any illegal drugs, the trial court had no evidence before it that he had used illegal drugs during this or the prior case.

{¶15} Even if Father could demonstrate that the caseworker and guardian ad litem improperly testified about his drug use, he has failed to demonstrate that the outcome of the hearing would have been different without their testimony. Although Father refused to stipulate to the documentary results of his drug screens at the time of the permanent custody hearing, he had already allowed the trial court to make factual findings about his illegal drug use at prior court hearings.

{¶16} For example, the trial court record reflects that, at adjudication and disposition, both parents stipulated that D.B. was a neglected and dependent child because, among other reasons, each parent had recently tested positive for illegal drugs. The trial court adopted those factual findings by the magistrate, without any objection by either parent or an appeal from the

adjudicatory and dispositional judgment. Because no objections were filed, no transcript of the review hearing was prepared, so this Court must presume that those findings were proper and cannot review them for plain error. *See In re D.T.*, 9th Dist. Lorain No. 13CA010451, 2014-Ohio-2332, ¶ 24; Juv.R. 40(D)(3)(b)(iv).

{¶17} During March 2015, the magistrate issued a decision after the annual review hearing, in which her factual findings included that each parent had tested positive for heroin in November 2014 and had refused to submit to any drug testing for the next two months. After restarting drug testing in November 2014, each parent tested positive for THC and oxycodone. The trial court adopted the decision of the magistrate and neither parent filed objections to the magistrate's decision. Because there is no transcript of the review hearing in the record, this Court must again presume that the findings about Father's illegal drug use were correct. *See id.*

{¶18} Father has failed to demonstrate that the outcome of the permanent custody hearing would have been different without the brief testimony of the caseworker and the guardian ad litem about his illegal drug use. Consequently, Father's second, third, and fourth assignments of error are overruled.

## MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN TERMINATING [MOTHER'S] PARENTAL RIGHTS BY GRANTING PERMANENT CUSTODY OF D.B. TO [LCCS] WHEN THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FAILING TO GRANT LEGAL CUSTODY TO MATERNAL AUNT [OF] D.B., OR AN EXTENSION OF TIME BY WHICH [LCCS] COULD CONSIDER MATERNAL AUNT.

**FATHER'S ASSIGNMENT OF ERROR V**

THE TRIAL COURT'S DETERMINATION THAT PERMANENT CUSTODY WAS IN D.B'S BEST INTERESTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONSTITUTED AN ABUSE OF DISCRETION AND PLAIN ERROR, AND VIOLATED FATHER'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER THE U.S. AND OHIO CONSTITUTIONS.

{¶19} Next, both parents argue that the trial court's permanent custody decision was not supported by the evidence. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned, orphaned, have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996). The trial court found that LCCS satisfied the first prong of the test because D.B. had been in its temporary custody for more than 12 of the prior 22 months at the time LCCS moved for permanent custody and neither parent challenges that finding.[1]

{¶20} Because the parents do not dispute that the trial court's "12 of 22" finding was supported by the evidence, they focus their arguments on the trial court's finding that permanent

---

[1] Although Mother asserts that the trial court was also required to find that D.B. could not be returned to his parents' custody under one of the factors enumerated in R.C. 2151.414(E), she has misinterpreted the language of R.C. 2151.414(B)(1) that "any" of several alternate grounds will satisfy the first prong of the permanent custody test. *See, e.g., In re A.H.*, 9th Dist. Lorain No. 13CA010454, 2014-Ohio-552, ¶ 8-9.

custody was in the best interest of D.B. Father also asserts that the trial court should have instead placed the child in the legal custody of the aunt or granted a six-month extension of temporary custody. The trial court must conduct a best interest analysis to determine the appropriate disposition for a child.[2] If permanent custody was in the best interest of D.B., the alternative dispositions of placing the child in the aunt's legal custody or of extending temporary custody were not. *See In re S.P.*, 9th Dist. Summit No. 27138, 2014-Ohio-1211, ¶ 10, citing *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10.

**{¶21}** We agree with the trial court that LCCS demonstrated by clear and convincing evidence that permanent custody was in the best interest of D.B. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, his wishes, the custodial history of the child, and his need for permanence in his life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Although the trial court is also required to consider any relevant factors under R.C. 2151.414(E)(7) through (11), none of those factors applied to the facts of this case. *See id.*

**{¶22}** Witnesses agreed that Mother and D.B. loved each other and that they usually interacted well together. Father, on the other hand, would often sit in the corner of the room and not interact with D.B. until he was prompted to. Moreover, while D.B. was placed outside his parents' custody for more than one year, the parents' interaction with him never progressed beyond weekly, supervised visits because they did not stabilize their mental health or substance

---

[2] Moreover, the trial court would have authority to extend temporary custody only if it also found that both parents had made "significant progress" on the case plan and that there was reasonable cause to believe that D.B. would be reunified with her or otherwise permanently placed during the extension period. R.C. 2151.415(D)(1).

abuse problems. Although each had engaged in some treatment during this case, by the time of the hearing, both Mother and Father insisted that they did not have substance abuse or mental health problems and that they did not need treatment.

{¶23} Less than one month before the permanent custody hearing, the parents' visits with D.B. were terminated. Mother admitted during her testimony that, during their last visit with D.B., she became anxious and angry about something that someone said, so she started screaming and threw a pop can. In her words, "it just flew out of my hand." Mother explained that LCCS staff deliberately "pushes" her "buttons" to trigger her anxiety and depression and that she could not control her reactions.

{¶24} Several witnesses testified about Mother's unstable mental health and her tendency to be calm one moment and then have a "meltdown" and become aggressive and agitated. LCCS was particularly concerned that Mother was not involved in consistent mental health treatment at the time of the hearing.

{¶25} Mother testified that she had been involved in mental health treatment off and on since she was a teenager and that she had been diagnosed with bipolar disorder, depression, anxiety, and attention deficit hyperactivity disorder. She first testified that she had stabilized her mental health but, after becoming emotionally distraught and taking a break during her testimony, she conceded that her mental health was not stable at that time.

{¶26} LCCS also presented evidence that the parents' drug use and refusal to seek treatment posed an ongoing threat to D.B. Despite their prior agreements on the record that they had repeatedly tested positive for illegal drugs during this case, Mother and Father each insisted that they did not abuse drugs during this case. Mother testified that, although she had used cocaine in the past, she had been sober since 2009. Also, despite her stipulation to the admission

of her drug tests during this case, Mother testified that the drug samples had been tampered with and/or that "[t]hose are not my tests." Father similarly testified that he had never used cocaine or any other illegal drug during this case and that "[e]very drug screen you've given me is not mine. I want you to prove it is." Because he claimed that LCCS was lying about him, Father stopped submitting to drug testing and revoked all of his information releases.

{¶27} D.B. was only three years old at the time of the hearing, so the guardian ad litem spoke on his behalf. The guardian ad litem opined that permanent custody was in D.B.'s best interest because the parents continued to test positive for illegal drugs, yet they denied that they had drug problems. She also expressed concern about the effects of each parent's unstable mental health on their ability to care for their child.

{¶28} By the time of the hearing, D.B. had been living outside his parents' custody in temporary placements for more than a year, close to half of his young life, and was in need of a legally secure permanent placement. During that time, his parents had made little progress on the reunification goals of the case plan and they did not dispute that they were unprepared to provide D.B. with a secure home.

{¶29} Father argues that the trial court should have instead placed D.B. in the legal custody of a maternal aunt. The trial court heard testimony that Mother and the aunt had been estranged for approximately six years after an incident of domestic violence between the two. The aunt testified that she only recently began speaking to Mother again and that she had not been aware of the prior case involving Mother's older children because she and Mother were not in contact at that time.

{¶30} The aunt had learned about this case only two weeks before the permanent custody hearing when Mother asked her to seek custody of D.B. The aunt had no established

relationship with D.B., she did not visit him during this case, and she had not gone through any screening to enable LCCS to determine whether she could provide D.B. with an appropriate home. The aunt repeatedly suggested during her testimony that, because she was a blood relative, she should not be required to prove to LCCS or the court that she was qualified to provide a suitable home for D.B.

{¶31} Given the evidence before the trial court, the parents have failed to demonstrate any error in the trial court's conclusion that permanent custody to LCCS, not legal custody to the aunt, was in the best interest of D.B. Mother's assignment of error and Father's first and fifth assignments of error are overruled.

## III.

{¶32} The parents' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JULIE A. SCHAFER
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

KATHLEEN M. AMERKHANIAN, Attorney at Law, for Appellant.

ROBERT CABRERA, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.

LISA COREY, Guardian ad litem.