[Cite as *In re P.M.*, 2022-Ohio-1389.]

STATE OF OHIO        )            IN THE COURT OF APPEALS
                            )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: P.M.                        C.A. Nos.    30176
      P.M.                                  30177

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 20-04-291
                     DN 20-04-292

DECISION AND JOURNAL ENTRY

Dated: April 27, 2022

SUTTON, Judge.

**{¶1}** Appellant, P.M. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Father is the biological father of twins, both with the initials P.M., born prematurely on March 24, 2020. Both children have medical conditions that require oversight by medical specialists and extra care by their caregivers. The children's mother passed away during the trial court proceedings.

**{¶3}** On April 8, 2020, CSB filed complaints to allege that the newborn twins were abused, neglected, and dependent children because of their mother's lengthy history of substance

abuse, criminal convictions, and CSB involvement with her older children. Although Father's paternity of the twins had not been established at that time, he was identified on the complaint as the alleged father of the twins and was served with a copy of the complaint. Father appeared at the shelter care hearing the following day and was represented by counsel.

{¶4} On June 23, 2020, although identified as an "amended" case plan because Mother had an ongoing case with one of her older children, CSB filed the first case plan involving the twins. Father and his counsel were served with a copy of the case plan, which identified Father as the alleged father.

{¶5} Father appeared with counsel at the adjudicatory and dispositional hearings. The trial court adjudicated the twins abused and dependent children and placed them in the temporary custody of CSB. In its dispositional decision, the trial court adopted the June 23 case plan as an order of the court and further ordered that Father be permitted to have at least two hours of weekly visitation with the children.

{¶6} Two weeks after the dispositional decision was filed, Summit County Child Support Enforcement Agency filed a separate NOTICE OF GENETIC TEST REPORT for each child, which indicated that genetic testing performed on June 12, 2020, had determined that Father was the biological father of the twins. On October 26, 2020, CSB filed an amended case plan with the trial court and served it on the parties, including Father. Among other things, the amended case plan identified Father as the established father of the twins, set specific reunification goals for him, and identified reunification services to help him achieve those goals. A handwritten notation on the case plan indicated that Father agreed with the contents of the case plan. None of the parties filed written objections to the case plan.

**{¶7}** During the next several months, Father visited with the children, but he refused to work on other requirements of the case plan, such as attending parenting classes and demonstrating to CSB that he had stable income and/or housing and that he could otherwise meet the children's basic and special medical needs. Father did not supply proof of income or housing and did not attend any of the children's medical or therapy appointments to learn how to meet their special medical needs. Father, who has no other children, told the caseworker and the guardian ad litem that he knew how to be a parent and had no need for case plan services.

**{¶8}** On March 12, 2021, CSB moved for permanent custody of the twins. At the final dispositional hearing, the trial court considered the agency's motion and the alternative of extending temporary custody for six months. After considering the evidence presented at the hearing, the trial court terminated parental rights and placed P.M. and P.M. in the permanent custody of CSB. Father appeals and raises two assignments of error.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED FATHER'S RIGHTS TO DUE PROCESS WHEN IT GRANTED [CSB'S] MOTION FOR PERMANENT CUSTODY, EVEN THOUGH THERE WAS NEVER A CASE PLAN ADOPTED BY THE TRIAL COURT THAT PROVIDED ANY REUNIFICATION SERVICES TO FATHER.

**{¶9}** Father's first assignment of error is that the trial court erred in granting permanent custody because its decision erroneously faulted him for failing to comply with the requirements of a case plan that was not legally binding. The premise underlying this argument is that the amended case plan that CSB filed on October 26, 2020, was not legally binding on the parties because the trial court never explicitly adopted it. This Court disagrees.

{¶10} CSB filed its October 26 modification to the case plan pursuant to R.C. 2151.412(F)(2), which provides, in relevant part:

> A party proposing a change to the case plan shall file the proposed change with the court and give [timely] notice of the proposed change in writing * * * to all parties * * *. All parties * * * shall have seven days from the date the notice is sent to object to and request a hearing on the proposed change.
>
> * * *
>
> (b) *If it does not receive a timely request for a hearing, the court may approve the proposed change without a hearing.* If the court approves the proposed change without a hearing, it shall journalize the case plan with the change not later than fourteen days after the change is filed with the court. * * * If * * * *the court neither approves and journalizes the proposed change nor conducts a hearing, the agency may implement the proposed change not earlier than fifteen days after it is submitted to the court.*

(Emphasis added.)

{¶11} The record reflects that CSB properly filed the proposed case plan amendment with the trial court and timely served Father and all other parties with a copy. Father had seven days to file objections to the amended case plan and request a hearing. *Id.* As this Court has held before, because Father raised no objections to the amended case plan, the case plan "became legally binding on the parties 15 days later, even without the explicit approval of the trial court." *In re L.P.*, 9th Dist. Summit No. 29963, 2021-Ohio-3183, ¶ 18, citing R.C. 2151.412(F)(2)(b) and *In re D.T.*, 9th Dist. Summit No. 29876, 2021-Ohio-1650, ¶ 38 (holding that absent timely objections, the amended case plan became binding on the parties 15 days later "by operation of law[.]").

{¶12} Father has not challenged this Court's prior interpretation of the relevant language of R.C. 2151.412(F)(2)(b), so we will not revisit that precedent now. Because Father has failed to demonstrate that he was not legally bound by the reunification requirements of the amended case plan that CSB filed on October 26, 2020, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED THE FATHER'S PARENTAL RIGHTS AS THE [JUDGMENT] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Next, Father argues that the trial court's permanent custody decision was against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S*., 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶14} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.)

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶15} In this case, the trial court found that Father's parental rights should be terminated because P.M. and P.M. could not be placed with Father within a reasonable time or should not be placed with him and that permanent custody was in the best interest of the children. *See* R.C. 2151.414(B)(1)(a). Father does not dispute the trial court's best interest finding but challenges only the trial court's finding that the twins could not be placed with him within a reasonable time or should not be placed with him because he demonstrated a lack of commitment to the children under R.C. 2151.414(E)(4).

{¶16} R.C. 2151.414(E)(4) requires the trial court to find that the children cannot or should not be returned to either parent if it determines that clear and convincing evidence establishes:

> The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

{¶17} The trial court explained in a paragraph how Father had failed to take the case plan seriously or attempt to comply with any of its reunification requirements to address his parenting deficiencies. At the end of the paragraph, the trial court concluded that Father had demonstrated a lack of commitment to his children because of his failure to address any of his parenting problems, and because of his "tardiness" both in establishing paternity and in his attendance at visits with the children.

{¶18} Father primarily challenges the trial court's findings that he was delayed in establishing his paternity and he was consistently late to his visits with the children. He points to evidence in the record, as explained above, that he established his paternity in a timely manner,

before the children were even adjudicated. The trial court's incorrect conclusion that there was a delay in Father establishing paternity, however, did not constitute reversible error because the trial court had substantial other evidence of Father's "actions showing an unwillingness to provide an adequate permanent home for the child[ren]." R.C. 2151.414(E)(4).

{¶19} Father also asserts that the trial court incorrectly faulted him for arriving late for visits with his children because the evidence demonstrated that he consistently came to his scheduled visits at the visitation center. According to the caseworker, Father was consistently at least 15 minutes late for his weekly, two-hour visits. Moreover, he sometimes arrived beyond the 15-minute cutoff period, so those visits were cancelled. The trial court was justified in focusing on his tardiness because Father gave up a portion of his weekly visits, or even the entire visit, because he was consistently late. Moreover, Father did not ask that his visitation time be changed, nor did he offer a reasonable justification for his ongoing tardiness. Father explained at the hearing that he came late to the visits because he did not like waiting outside for the visits to begin and he knew the visit would not be cancelled if he arrived less than 15 minutes late.

{¶20} Moreover, the trial court's finding that Father did not take the case plan seriously and did nothing to work toward reunification with his children is fully supported by the record. After Father established his paternity, reunification goals and services for him were added to the case plan. As explained in the disposition of Father's first assignment of error, because no one objected to the amended case plan, its requirements later became binding on Father. CSB had no concerns that Father had substance abuse or mental health problems, so the case plan goals for him were to successfully complete parenting classes and demonstrate that he could meet the children's basic needs, including housing, financial support, and medical care.

{¶21} The evidence was not disputed that Father refused to work on any of the reunification requirements of the case plan. He did not attend parenting classes because he did not feel that he needed them and/or said that he did not have time. He did not attend any of the children's medical or therapy appointments, so he had no insight into how to meet their special medical needs. In fact, without a reasonable explanation, Father testified that he did not believe that the twins required some of the medical treatment that they had been receiving. Finally, Father did not maintain contact with the caseworker or guardian ad litem and had never provided either of them with proof that he was employed or had a place to live. Although Father kept telling them that he had housing, he never provided an address.

{¶22} Father has failed to demonstrate that the trial court lost its way in finding that the children could not or should not be placed in his custody because he demonstrated a lack of commitment to them. *See* R.C. 2151.414(E)(4). Father's second assignment of error is overruled.

III.

{¶23} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Peas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CALLAHAN, J.
CONCURS.

HENSAL, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶24} Although I agree with majority's decision to affirm the permanent custody decision, I concur in the judgment for a different reason. Specifically, I do not agree that Father was legally bound to comply with the terms of the amended case plan. This Court has emphasized that "[t]o be binding on the parties, the case plan and all amendments must be filed with and adopted by the trial court." *In re Q.C.*, 9th Dist. Summit Nos. 29988, 29989, and 29990, 2021-Ohio-3993, ¶ 25, citing R.C. 2151.412(D)-(F). Absent explicit adoption by the trial court, Revised Code Section 2151.412(F)(2) provides only that the agency "may implement" the changes set forth in the amended case plan after 15 days, which is what happened in the case.

{¶25} Although cited by the majority, this Court's reasoning on this issue in *In re D.T.*, 2021-Ohio-1650, was limited to whether, absent any objections by the parties, an amended case

plan became operational under the statute, so as to demonstrate reasonable reunification efforts by the agency. I do not agree with this Court's later extension of that holding in *In re L.P.*, 2021-Ohio-3183, at ¶ 18, that Section 2151.412(F)(2) allows an amended case plan to become legally binding on all parties without explicit adoption by the trial court.

{¶26} I agree that after proposing the amended case plan, CSB provided and implemented case plan services for Father in which he did not participate. However, I disagree with this court's precedent in *In re L.P.* that Father was subject to a binding court order to do so and therefore I must concur in judgment only.


APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JAMISON JOHNSON, Guardian ad Litem.