[Cite as *In re B.M.*, 2025-Ohio-247.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: B.M.

C.A. No.  31193

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.  DN 22 01 0029

DECISION AND JOURNAL ENTRY

Dated: January 29, 2025

STEVENSON, Judge.

{¶1}  Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated all parental rights and placed his child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). Because the judgment is not against the manifest weight of the evidence, this Court affirms.

I.

{¶2}  Mother and Father are the biological parents of B.M., born January 29, 2015. The parents were married at one time but had divorced. Mother is also the biological mother of M.S.f., M.S.m., and K.W., who were eleven, ten, and one year old, respectively, when CSB became involved with the family.

{¶3}  In January 2022, CSB investigated concerns regarding Mother's household. The agency filed complaints alleging that all four children were abused, neglected, and dependent based on various conditions in the home. In addition to general unsafe and unsanitary conditions,

CSB alleged that the children witnessed ongoing incidents of domestic violence between Mother and K.W.'s father, and that Mother had a history of agency involvement and mental health and drug issues. The agency obtained emergency temporary custody of the four children and placed them together in a foster home. Shortly thereafter, CSB placed B.M. with her paternal grandmother ("Grandmother") with Father's approval.

{¶4} Both Mother and Father waived their rights to an adjudicatory hearing and stipulated that B.M. was a neglected and dependent child. CSB dismissed its allegations of abuse. The parents again waived their rights to a dispositional hearing and agreed to B.M.'s placement in CSB's temporary custody and the adoption of the agency's case plan as a court order. While Mother's objectives addressed basic needs, substance abuse, and mental health concerns, the case plan required Father to establish a relationship with the child, cooperate with CSB regarding his home assessment, and address any concerns the agency might identify.

{¶5} After the child had spent three months in Grandmother's home, CSB moved to modify its temporary custody to temporary custody to Father under the agency's protective supervision. Grandmother was not ensuring B.M.'s participation in counseling and had given the child to Father because she was not willing to maintain B.M. in her home due to the child's behavioral issues. Father officially obtained temporary custody of the child on May 16, 2022. Less than three months later, however, Father informed CSB that he was not able to maintain B.M. in the home he shared with his girlfriend because the child was interfering with that relationship. Accordingly, the agency resumed temporary custody of the child with both parents' agreement. CSB placed B.M. in a kinship home with M.S.m., in the home of that half-sibling's paternal aunt and uncle.

{¶6} In the meantime, Mother began making gradual and consistent progress in addressing her case plan objectives. She visited regularly with the children, obtained employment, and demonstrated significant periods of sobriety. Based on Mother's substantial, ongoing progress, the agency sought and obtained two six-month extensions of temporary custody of the four children. Unfortunately, 23 months into the cases, Mother suffered a second relapse into drug use. Around the same time, B.M.'s kinship placement disrupted when her caregivers could no longer manage the child's significant behavioral issues. The caregivers requested that CSB remove B.M. from their home after the child caused a catastrophic flooding event that necessitated extensive and costly repairs. The agency thereafter placed B.M. in another foster home.

{¶7} CSB moved for permanent custody of all four children, as each had been in the agency's temporary custody in excess of 12 of 22 consecutive months. As to B.M., CSB alleged that permanent custody was in that child's best interest because Mother could not provide a safe and stable home and Father had showed no interest in reunification with the child until very recently and after 15 months of only sporadic contact with the caseworker and B.M. The guardian ad litem supported the agency's motion but requested the appointment of counsel to represent B.M. because the child had expressed a desire to return home to Mother. The juvenile court appointed separate counsel to represent the child.

{¶8} The juvenile court scheduled two days for the permanent custody hearing. On the first day, both Mother and Father failed to appear. Neither parent had filed a dispositive motion. The hearing concluded by noon on the first scheduled date and the trial court announced it would take the matter under advisement and issue a judgment forthwith. The juvenile court reopened the proceedings, however, after Father's attorney informed it that Father had recently contacted counsel and expressed his desire to contest CSB's motion. The juvenile court heard additional

evidence seven weeks later, in consideration of the motion for legal custody of B.M. to Grandmother that Father filed one week prior to the second day of hearing.

{¶9} The juvenile court issued a judgment, terminating Mother's and Father's parental rights and awarding permanent custody of B.M. to CSB. Father appealed and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND IT WAS IN THE BEST INTEREST OF THE CHILD TO GRANT PERMANENT CUSTODY TO [ ] CSB BECAUSE THAT DECISION WAS NOT IN THE BEST INTEREST OF THE CHILD, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶10} Father argues that the juvenile court's award of permanent custody of B.M. to CSB is against the manifest weight of the evidence. This Court disagrees.

{¶11} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶12} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another

child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} As to the first prong, CSB alleged that B.M. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period pursuant to R.C. 2151.414(B)(1)(d). Father does not contest this finding. Our review of the record indicates that clear and convincing evidence supports the trial court's first prong finding.

{¶14} Father argues that permanent custody is contrary to the best interest of B.M. He focuses his challenge by arguing that the juvenile court erred by denying his motion for legal custody to Grandmother. Father's argument is not persuasive.

{¶15} CSB removed B.M. from Mother's home when the child was six years old. There is no evidence regarding Father's visitation or relationship with the child prior to that time. It is reasonable to presume, however, that Father had limited contact with B.M. as he claimed to have been unaware of the concerning conditions in Mother's home and their impact on the child.

{¶16} B.M. spent almost two and a half years in the agency's temporary custody. During that time, CSB placed her in two separate foster homes and in two different kinship caregiver homes. The child resided with Grandmother for three months at the beginning of the case, until Grandmother gave her to Father and informed the agency that she could no longer maintain the child in her home due to the child's unmanageable behavioral issues. B.M. was officially in Father's temporary custody thereafter for only two and a half months, at which time Father asked CSB to remove her from his home.

{¶17} B.M. has a substantial bond with her three half-siblings. CSB and the children's caregivers facilitated weekly sibling visits. The caseworker and guardian ad litem each testified that B.M.'s strongest bond is with her brother and sisters. While the child maintained a bond with both Mother and Father, she had also developed strong bonds with M.S.m.'s aunt and uncle and her most recent foster mother. B.M. also told the guardian ad litem that she loves Grandmother.

{¶18} While there were no issues regarding B.M.'s interactions with her siblings, the evidence demonstrated that the child's interactions with various caregivers were problematic. No fewer than three caregivers, including Grandmother and Father, requested the child's removal from their homes based on B.M.'s unmanageable behavioral issues. The guardian ad litem testified that Father only sporadically visited with the child, which frustrated B.M. and exacerbated her tantrums and other negative behaviors towards her caregivers.

{¶19} On the first day of the permanent custody hearing, the guardian ad litem testified that B.M. had earlier indicated she wanted to return to Mother's home. However, the child had recently told her that she wanted to return to the home of M.S.m.'s aunt and uncle. If neither Mother's nor the kinship home was an option, B.M. told the guardian ad litem that she would want

to live with Father but also that she would be "okay" with staying with her current foster mother. B.M. had not indicated any desire to live with Grandmother.

{¶20} Seven weeks later on the second day of the hearing, the guardian ad litem reported that B.M. was no longer expressing any desire to live with Mother, Father, or M.S.m.'s aunt and uncle. Instead, the child told her that she wished to remain with her current foster mother. The guardian ad litem testified that B.M. expressly told her that she did not want to live with Grandmother. The child reported that Grandmother was "mean" to her during the few months she lived with her at the beginning of the case. Even so, B.M. reported that she wanted to be able to visit with Grandmother, as well as her parents.

{¶21} After two and half years in custodial limbo, B.M. requires permanency. She lived in the homes of five different caregivers. During that time, she attended three different schools based on the locations of her placement homes. Those changes also caused disruptions in her mental health services. B.M. deserves stability to enable her to address her educational and emotional needs on a consistent basis.

{¶22} Mother is unable to provide a safe and stable home for B.M. After her second relapse into drug and alcohol abuse, Mother stopped participating in services or maintaining contact with the caseworker, guardian ad litem, and her attorney.

{¶23} Father was also unable to demonstrate the ability to provide an appropriate home for the child. He made negligible case plan progress, failing to maintain regular contact with the caseworker, guardian ad litem, and B.M. Father was convicted of two crimes and began testing positive for illegal drug use while the case was pending.

{¶24} Immediately after the first day of the permanent custody hearing, Father expressed an interest to the caseworker in reunifying with B.M., although he acknowledged he did not know

if he could maintain her on a full-time basis. Father did not ask about the possibility of placing B.M. in the legal custody of Grandmother with the caseworker, although he filed such a motion a week before the second day of the hearing.

{¶25} CSB demonstrated by clear and convincing evidence that neither parent could provide an appropriate home for B.M. Nevertheless, the evidence established that the child maintained a strong bond with both Mother and Father, and an even more substantial bond with her three half-siblings. In addition, B.M. told the guardian ad litem that she wanted to maintain a relationship with her biological family, including Grandmother. The evidence demonstrated that the siblings were enjoying regular visits and that those had a positive effect on the children. In addition, there was no evidence to indicate that maintaining the child's relationship with her biological parents and Grandmother in supervised settings would put her at risk of harm. Accordingly, if Father's proposed legal custodian was suitable to provide a safe and stable permanent home for B.M. who had strong, established familial bonds and reasonably expressed her desire to maintain those relationships, the R.C. 2151.414(D)(1) best interest factors would mitigate against an award of permanent custody in this particular case. The evidence demonstrated, however, that an award of legal custody to Grandmother was contrary to the child's best interest under the circumstances.

{¶26} Grandmother had no contact with B.M. for two years after she gave the child to Father without notifying CSB. After the first day of the permanent custody hearing, the caseworker contacted Grandmother and asked her if she was interested in placement of the child. Initially, Grandmother could not commit to providing a home for B.M. The caseworker testified that the week before the second day of the hearing, Grandmother had expressed an interest in obtaining legal custody of the child.

{¶27} Grandmother testified that she is not aware of the child's mental health diagnoses or services. Although she testified that she would educate herself and ensure B.M.'s ongoing participation in counseling, Grandmother had failed to take the child to her scheduled counseling appointments while she was living with Grandmother. While Grandmother testified that she has a second bedroom in her home for the child, she admitted that she did not have any furniture, clothing, or other supplies for B.M. When asked how she would manage the child's ongoing behavioral issues that she could not tolerate when the agency first placed B.M. with her, Grandmother simply testified that she would give the child "more love and support" and maintain the child in counseling. After having two very recent visits with B.M., Grandmother described the visits by stating, "It wasn't bad."

{¶28} Grandmother repeatedly blamed the child's behavioral issues on the child's anger at Mother. Grandmother claimed to have only recently become aware of Father's substance abuse issues and testified that she did not know whether Father had any pending criminal cases. She had learned that Father was on GPS home monitoring but did not know why.

{¶29} The guardian ad litem opined that permanent custody was in the child's best interest. She reported that neither parent was in a position to reunify with B.M. The guardian ad litem opined that legal custody of B.M. to Grandmother was not in the child's best interest given her concerns that Grandmother had not visited with the child for two years after the agency removed B.M. from Grandmother's home, that the child still exhibited the same behavioral issues that caused Grandmother to terminate placement in her home after a couple months, and that B.M. was adamant about not wanting to live with Grandmother.

{¶30} The caseworker testified that the foster mother is open to adopting the child and amenable to facilitating ongoing visits between B.M. and her biological family. In addition, she

testified that CSB has submitted Grandmother's information to its kinship department and that the agency would continue to consider Grandmother for possible placement or adoption if either might ultimately be a viable permanent option for the child. The caseworker emphasized, however, that B.M. was adamant about not wanting to return to Grandmother's home, even though the child understood that doing so would maintain her with family.

{¶31} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of B.M. to CSB. After two and a half years, neither parent was able to provide a safe, stable, and appropriate home for B.M. Although the child has an established bond with both parents, she also has developed a strong bond with her current foster mother who indicated a willingness to provide a permanent home for her and to facilitate B.M.'s ongoing relationship with her biological family. In light of all the circumstances here, CSB presented clear and convincing evidence that an award of permanent custody is in the best interest of the child. Accordingly, the juvenile court's judgment terminating Mother's and Father's parental rights is not against the manifest weight of the evidence.

{¶32} Moreover, this Court rejects Father's argument that the juvenile court erred by denying his motion for legal custody of B.M. to Grandmother. Based on the evidence previously outlined, we cannot say that the trial court erred in denying Father's motion for legal custody to Grandmother. As the agency must support its motion for permanent custody by the higher clear and convincing evidentiary standard, it is well settled that "if permanent custody is in the best interest of the child, legal custody to a relative necessarily is not." *In re M.S.*, 2023-Ohio-1558, ¶ 26 (9th Dist.), citing *In re D.T.*, 2021-Ohio-1650, ¶ 15 (9th Dist.).

**{¶33}** Based on the above discussion, this Court concludes that the juvenile court did not err by granting CSB's motion for permanent custody and terminating the Mother's and Father's parental rights. Father's assignment of error is overruled.

III.

**{¶34}** Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, P. J.
CARR, J.
CONCUR.


<u>APPEARANCES:</u>

JAYSEN W. MERCER, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.